Parkway Realty Corporation v. Commissioner. A.B. and B. M. Rosoff, Trustees under trust created by Max Rosoff v. Commissioner.
Parkway Realty Corp. v. Commissioner
Docket Nos. 62277 and 62278.
United States Tax Court
T.C. Memo 1959-50; 1959 Tax Ct. Memo LEXIS 198; 18 T.C.M. (CCH) 235; T.C.M. (RIA) 59050; March 16, 1959
*198 Held: Certain expenditures made by petitioners in 1952 and 1953 in connection with the settlement of litigation involving the creation of and transfers to the Max Rosoff Trust and the probate of the will of Max Rosoff, were capital expenditures and are not deductible under section 23(a)(1)(A) or section 23(a)(2) of the Internal Revenue Code of 1939. Curtiss K. Thompson, Esq., for the petitioners. James E. Markham, Jr., Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in petitioners' income taxes as follows: Dkt. No.
Taxable Period
Deficiency
62277
Calendar Year 1952
$ 1,959.90
1-1-53/5-18-53
1,134.86
62278
Calendar Year 1952
6,540.16
Calendar Year 1953
17,691.78
The principal question presented is whether certain expenditures made by petitioners in 1952 and 1953 in connection with the settlement of litigation involving the creation of and transfers to the Max Rosoff inter vivos trust and the probate of the will of Max Rosoff, are deductible under the provisions of section 23(a)(1) or section 23(a)(2) of the Internal Revenue Code of 1939. Certain attorney and accountant fees apparently not incurred in connection with the *199 above litigation have been conceded on stipulation and brief by respondent to be deductible and will be taken into consideration in the computation under Rule 50. An additional amount allegedly paid Frank Rosoff as attorney fee not in connection with such litigation will hereinafter be discussed. Findings of Fact The stipulated facts are incorporated herein by this reference. Parkway Realty Corporation (hereinafter sometimes referred to as Parkway) is a corporation organized and existing under the laws of Connecticut, with its principal place of business at 21 College Street, New Haven, Connecticut. Its Federal income tax returns for the period involved were filed with the director of internal revenue at Hartford, Connecticut. A.B. and B. M. Rosoff are the trustees under an Indenture of Trust (hereinafter referred to as Rosoff Trust) executed November 12, 1947, between Max Rosoff and said trustees. Federal fiduciary income tax returns for such trust for the period involved were filed with the director of internal revenue at Hartford, Connecticut. Max Rosoff (hereinafter referred to as Rosoff) was twice married. His first wife died in 1929. Six children were born of this marriage: Abraham *200 (A. B.), Benjamin (B. M.), Frank, Louis, Ida (now Ida Brownstein) and Gertrude (now Gertrude Shapiro). On or about April 14, 1930, Rosoff married Eva Leginsky. Prior to their marriage, Rosoff and Eva executed an antenuptial agreement wherein Eva waived her statutory rights as a surviving spouse, in excess of the sum of $5,000, and discharged Rosoff's estate from any claim in excess of $5,000 that she might have as surviving spouse. One child, Shirley (now Shirley Rosoff Magid), was born of the marriage of Rosoff and Eva. In April 1944, Eva had commenced a suit against Rosoff seeking dissolution of the antenuptial agreement referred to above and for money damages. In July 1944, Eva instituted another action against Rosoff for damages alleged to have been suffered by Eva as a result of Rosoff's non-compliance with the terms of the antenuptial agreement. In February 1945, Rosoff and Eva entered into a written agreement whereby the suits mentioned above were settled. Such agreement provided inter alia that the antenuptial agreement referred to above, insofar as it limited Eva's rights as a surviving spouse, was canceled. On November 9, 1945, Rosoff executed his will. Said will provided *201 for pecuniary legacies for each of his seven children as well as a number of pecuniary legacies for other relatives, charities and others. The will provided that the residue of his estate should be held by Harold E. Alprovis and The Tradesmens National Bank of New Haven in trust for the following purposes: "ARTICLE XV * * *
"(a) To receive, hold, manage, invest, reinvest and collect the rents, issues, income and profits thereof. "(b) To give to my wife, for her use during the term of her natural life, one third (1/3) of the net income of all my property, to be paid to her in quarterly installments; it being my intention to thus set out to my wife that share or interest in my estate, to which she is entitled under and by virtue of the laws of the State of Connecticut. "(c) To pay one half (1/2) of the net income then remaining, during the term of the natural life of my wife, to any worthy, charitable or philanthropic organizations or institutions located anywhere in the world, in the uncontrolled discretion of my said trustees. "(d) To pay the other one half (1/2) of the net income then remaining, during the term of the natural life of my wife, to my then living grand-children and great *202 grandchildren, share and share alike. "ARTICLE XVI "Upon the death of my said wife, to distribute the principal of my estate, and any additions thereto, in the following manner: "(a) One third thereof to any worthy, charitable or philanthropic organizations or institutions, located anywhere in the world, in the uncontrolled discretion of my said trustees; "(b) One third thereof to those of my children who shall then be alive, share and share alike; "(c) The remaining one third thereof to my grand-children and great grandchildren who shall then be alive, share and share alike." * * *
Rosoff's occupation for many years prior to November 12, 1947, was the investment in and management of real estate. He resided in New Haven, Connecticut. On that date he was the owner of 34 parcels of real estate located in New Haven and nearby towns. Most of such parcels of real estate were improved with tenement houses or business buildings and were occupied by tenants. On that date Rosoff was the president of and owned all of the issued and outstanding stock of Parkway Realty Corporation, a petitioner herein. Parkway was the owner of six pieces of real estate located in New Haven which were also improved *203 with tenement houses or business buildings and were occupied by tenants. On November 12, 1947, Rosoff executed an irrevocable trust (Rosoff Trust), wherein two of his sons, A. B. (Abraham) Rosoff and B. M. (Benjamin) Rosoff were named as trustees. He transferred to such trust the 34 parcels of real estate referred to above and 825 shares of the stock of Parkway. The trust agreement provided inter alia that the trustees should take title to the property involved, manage same in accordance with the terms of the trust and collect the income therefrom. It was further provided that the trustees should pay Rosoff $100 per week for as long as he lived, and in the event the income from the trust was insufficient to satisfy such payments, the six children of Rosoff by his first marriage guaranteed to make such payments themselves. The trust provided that after Rosoff's death the trustees should pay his wife Eva and his daughter Shirley in equal shares, the sum of $5,000. The remainder of the trust corpus and accumulated income was then to be distributed among Rosoff's six children by his first wife in equal shares. The 34 parcels of real estate transferred to the trust on November 12, 1947, *204 were mostly in slum districts. They were generally in a poor state of repair and there were mortgages outstanding against such parcels in excess of $220,000. Some of such mortgages were in default. At that time bills for insurance premiums, taxes, water, electricity and mechanics' services aggregating in excess of $13,000 were overdue. After the trust acquired the properties described above, the management of its interests required the full time of one trustee, B. M. Rosoff, and part of the time of the other trustee, A. B. Rosoff. During the three years following the creation of the trust, the policy of the trustees was to repair the properties, sell the least remunerative of them, and put payment of expenses on a current basis. Rosoff died at the age of 80, on November 24, 1950. At that time the trustees were in a current position with respect to paying the expenses of the real estate and they had sold five of the properties. On February 14, 1951, Eva and her daughter Shirley brought a suit in the Superior Court for New Haven County, Connecticut, against Benjamin and Abraham, individually and as trustees of the Rosoff Trust, and also against the other children of Rosoff by his first *205 wife. In such suit the plaintiffs asked that the court declare the Rosoff Trust agreement null and void; set aside the deeds purporting to transfer the 34 parcels of real estate owned by Rosoff to the trustees; issue temporary and permanent injunctions restraining the defendants from wasting, encumbering or disposing of any of the property held by the trustees, including the stock of Parkway; and determine that the plaintiffs were entitled to $500,000 damages. The substance of the plaintiffs' allegations in support of their complaint was that Rosoff was incompetent when he executed the Rosoff Trust Agreement and the transfers thereto, and that he was induced to do so as a result of undue influence and duress on the part of the defendants. The plaintiffs further alleged that such transfers were designed to defraud Eva of her statutory share of Rosoff's estate to which she would be entitled as the surviving spouse. Upon the institution of the action the plaintiffs caused all of the real estate held by the Rosoff Trust to be attached and notices of lis pendens to be filed in the land records pertaining thereto. The attachment of the real estate in such action could have been released *206 only upon the substitution of a bond in an amount equal to the value of the real estate with a responsible surety. During the pendency of such action the attachment and lis pendens with regard to one of the pieces of real estate were ordered discharged by the Superior Court upon substitution of a bond. The plaintiffs appealed from such an order but the appeal was never argued and it appears that the attachment and lis pendens were never discharged during the course of the litigation. The attachments prevented the trust from disposing of any property so attached. Upon Rosoff's death an application was made to the Probate Court for the District of New Haven for probate of his will, the pertinent provisions of which are set forth above. By an order entered April 27, 1951, such will was admitted to probate. On May 22, 1951, Eva and her daughter Shirley filed an appeal from such order with the Superior Court in the County of New Haven and on the same day the probate court entered an order that notice of such appeal be given to the interested parties. Under date of January 24, 1952, in a document captioned "Reasons for Appeal" directed to the Superior Court, New Haven County, it was alleged *207 by the appellants, Eva and Shirley, that at the time Rosoff executed the purported will and for some time prior thereto he was of unsound mind and memory and lacked sufficient testamentary capacity to execute a will. It was further alleged that the instrument involved was executed when Rosoff was under the influence, domination and control of the six children of his first marriage. The probated estate of Max Rosoff had an inventory value of $42,052.30, and with some later additions the total assets in the estate, per probate records, amounted to $46,063.64. For estate tax purposes, the value of the properties that were transferred to the trust, as of the date of death, was $250,337.50. Under date of December 5, 1952, an agreement was entered into as follows: "AGREEMENT entered into this 5th day of December 1952, between EVA ROSOFF and SHIRLEY ROSOFF MAGID, both of New Haven, Connecticut, First Parties, and BENJAMIN M. ROSOFF and ABRAHAM B. ROSOFF, both of Hamden, Connecticut, and FRANK ROSOFF, of New Haven, Connecticut, Second Parties. "WHEREAS, said First Parties, Eva Rosoff and Shirley Rosoff Magid, have brought lawsuits against said Benjamin M. Rosoff and Abraham B. Rosoff, individually *208 and as trustees under an inter vivos trust agreement created by Max Rosoff, late of New Haven, and Ida Brownstein, Frank Rosoff, Louis Rosoff, all of said New Haven, and Gertrude Rosoff Shapiro, of St. Paul, Minnesota, resulting in the following litigation now pending in the Superior Court for New Haven County, and the Supreme Court of Errors of the State of Connecticut, to wit: "In the Superior Court - Case #75102, (a suit to set aside the trust deed), and #75563, (appeal from the probate of the will of Max Rosoff), and in the Supreme Court, appeal from an order of Honorable Kenneth Wynne, granting release of attachment and lis pendens on 32-34 Anderson Avenue, West Haven, Connecticut, in said case #75102; "NOW, THEREFORE, in consideration of the following payments to said Eva Rosoff and Shirley Rosoff Magid, they agree with Second Parties as follows: "1. Said Second Parties, Benjamin Rosoff, Frank Rosoff, and Abraham B. Rosoff, for themselves and on behalf of said Ida Brownstein, Louis Rosoff and Gertrude Rosoff Shapiro, agree to pay said First Parties, Eva Rosoff and Shirley Rosoff Magid, and they agree to accept, Seventyone Thousand, Five Hundred Dollars ($71,500) in full and complete *209 settlement of all said First Parties' claims, demands and causes of action of whatsoever nature against all said defendants in said lawsuits, and The Parkway Realty Company, and also against the Estate of said Max Rosoff, and against The Tradesmens National Bank, either individually or as executor of the will of said Max Rosoff, except for a specific legacy of One Thousand Dollars ($1,000) given to Shirley Rosoff Magid in the will of said Max Rosoff. "2. Said payment of Seventy-one Thousand, Five Hundred Dollars ($71,500) is to be made to First Parties as follows: "Eleven Thousand, Five Hundred Dollars ($11,500), upon the execution of this agreement. "Thirty Thousand Dollars ($30,000) on or before January 20, 1953. It is understood that Second Parties may pay any part thereof prior to said January 20, 1953. "Thirty Thousand Dollars ($30,000) on or before April 30, 1953. It is understood that Second Parties may pay any part thereof prior to said date. "3. Simultaneously with the execution of this agreement, all of said lawsuits referred to above are to be withdrawn and withdrawals signed by plaintiffs' attorneys are to be delivered to defendants' attorneys; releases of all real estate *210 attachments and lis pendens placed on properties of said defendants and of The Parkway Realty Company, in connection with said lawsuits, are to be given Second Parties, and a complete release executed by Eva Rosoff and Shirley Rosoff Magid in favor of the Estate of Max Rosoff, and The Tradesmens National Bank, individually and as executor of the Estate of Max Rosoff, except for said specific legacy to said Shirley Rosoff Magid, shall be delivered to the Bank upon the execution hereof. "4. Said Benjamin M. Rosoff, Abraham B. Rosoff, and Frank Rosoff, hereby agree with First Parties that they will not transfer any of the individual properties owned by them, nor any properties, including stock of The Parkway Realty Company, covered by said trust agreement, until full payment of said Seventy-one Thousand, Five Hundred Dollars ($71,500) is made as herein contained, except that Abraham B. Rosoff may transfer his individual homestead located at 16 Morris Street, Hamden; except that said properties may be sold or mortgaged at any time provided the proceeds of the sale or mortgage are used to pay on any balance of said Seventy-one Thousand, Five Hundred Dollars ($71,500) remaining unpaid at *211 the time. "5. Said Benjamin M. Rosoff, Frank Rosoff and Abraham B. Rosoff, jointly and severally unconditionally guarantee the payment of said Seventy-one Thousand, Five Hundred Dollars ($71,500) as above specified. "6. A complete release executed by Eva Rosoff and Shirley Rosoff Magid in favor of all of said defendants and The Parkway Realty Company, of all claims, demands and causes of action, shall be delivered to Second Parties upon final payment of said Seventy-one Thousand, Five Hundred Dollars ($71,500)." * * *
On December 5, 1952, the suits referred to in the above agreement were withdrawn by the plaintiffs. Concurrently with the settlement agreement of December 5, 1952, the trustees of the trust and the beneficiaries of the trust, exclusive of Eva Rosoff and Shirley Rosoff Magid entered into an agreement with the executor of the estate of Max Rosoff (Tradesmens National Bank) in which the trustees and certain of the beneficiaries agreed to hold the executor and the estate harmless from all loss, cost, or expense by reason of the transfer in trust and also agreed to pay succession taxes to the State of Connecticut and any Federal estate tax which might be due. The New Haven *212 probate records disclose the following entries with regard to the estate of Max Rosoff: "5. By action returnable to the Superior Court at New Haven on the first Tuesday of February 1951, Eva Rosoff and Shirley Rosoff, widow and one of the daughters of the decedent sued to set aside said transfer in trust in which action the Executor was not made a defendant. "6. By action returnable to the Superior Court at New Haven on the first Tuesday of July 1951 said Eva Rosoff and Shirley Rosoff took an appeal from the Probate of the will of said decedent. "7. Said two actions in the Superior Court were interdependent to such an extent that the settlement of one would lead to a settlement of the other. "8. In late November or early December 1952 the parties to the first of said actions reached an agreement of settlement as an incident to which it was agreed to withdraw the appeal from the probate of the will provided the Executor would consent to certain safeguards. "9. As part of the settlement of said two actions the Trustees of said trust and certain of the individual beneficiaries thereof have undertaken by written agreement to hold the Executor and the estate of the decedent harmless from *213 all loss, cost, or expense by reason of the transfer in trust referred to in Paragraph 3 above, and also to conduct at their own expense any further proceedings for the determination of any succession tax which might be due to the State of Connecticut and any Federal estate tax which might be due to the United States of America, and to pay tax liabilities so determined, if any. "10. By reason of the foregoing it is desirable that said estate be settled to the extent possible at the present time, and to pay the cash legacies set forth in the will of said decedent to the extent the assets are available. "11. The following account contains a true statement of all monies received by the Executor, all of the claims allowed by it against said estate having been fully paid, satisfied and discharged. "Wherefore, the undersigned Executor exhibits the following account with the said estate for allowance by this court and makes application for the ascertainment of distributees and for an order of distribution in accordance therewith." Thereupon the account was filed and distribution made to the distributees named in the order of distribution. No part of the remaining estate was distributed to *214 Eva, her rights and interests in the estate having been waived and released by the terms of the settlement agreement of December 5, 1952, and the interest of Shirley Rosoff Magid was limited to $1,000, also in accordance with the provisions of the settlement agreement of December 5, 1952. The additional Connecticut Succession Taxes, Federal estate taxes and expenses of litigation incurred were not paid by the estate but were paid by the parties to the agreement aforesaid. The $71,500 referred to in the above settlement agreement was paid to Eva and Shirley by Parkway and Rosoff Trust in the amounts and during the taxable years as reflected below: Amount Paid
Year
Parkway
Rosoff Trust
1952
$ 3,833.00
$ 7,667.00
1953
25,166.33
34,833.67
On their income tax returns for the years 1952 and 1953, Parkway and Rosoff Trust deducted the following amounts for cost of "Litigation Settlement" or "Litigation Settlement Expenses." Amount Deducted
Year
Parkway
Rosoff Trust
1952
$ 3,833.00
$ 7,667.00
1953
25,499.66
35,500.34
Such deductions were claimed with respect to the payments made to Eva and Shirley referred to above. The amount of such deductions claimed for the year 1953 which is in excess of the amount so paid, *215 results from petitioners claiming a deduction for the $1,000 paid to Shirley and described in the settlement agreement as "a specific legacy of One Thousand Dollars ($1,000) given to Shirley Rosoff Magid in the will of said Max Rosoff." Respondent disallowed such claimed deductions. The trustees of the Rosoff Trust employed Irving Gumbart, of Gumbart, Corbin, Cooper & Tyler, as counsel in defending the action instituted by Eva and Shirley in February 1951. Harry Koletsky entered the case as counsel on behalf of Gertrude Rosoff Shapiro. In connection with the litigation involving the appeal from probate, Irving Gumbart represented all of Rosoff's children by his first wife except Gertrude Rosoff Shapiro. During the years 1952 and 1953 the trustees of the Rosoff Trust and Parkway paid the following amounts to the following persons for counsel fees incurred in connection with the two lawsuits mentioned above: Amount Paid by Parkway
Amount Paid by Rosoff Trust
Harry
Gumbart, Corbin,
Harry
Gumbart, Corbin,
Year
Koletsky
Cooper & Tyler
Koletsky
Cooper & Tyler
1952
$2,639.00
$1,666.57
$3,002.07
1953
$333.33
3,916.66
2,000.00
1,833.37
On their income tax returns for the years 1952 and 1953, the following amounts *216 were claimed as deductible legal and accounting expenses: Year
Parkway
Rosoff Trust
1952
$2,700.00
$6,019.44
1953
1,340.00
6,907.34 Respondent disallowed such deductions. Opinion On their income tax returns for the taxable periods involved, Parkway and Rosoff Trust deducted certain amounts which were paid by them to Eva and Shirley, or their attorneys, after the execution of the settlement agreement whereby Eva and Shirley withdrew their suits seeking to have the Rosoff Trust and the transfers thereto voided and to have Rosoff's will set aside. Petitioners also deducted certain amounts of attorney fees paid by them in connection with such litigation. Respondent disallowed the deductions and petitioners have assigned error to such treatment. Petitioners contend that such expenditures are deductible as ordinary and necessary business expenses under section 23(a)(1)(A), Internal Revenue Code of 1939, [1] *217 or as non-trade or non-business expenses under section 23(a)(2). [2] In support of their contention, petitioners argue that both the corporation and the trustees under the trust indenture were engaged in the business of operating, managing and selling real estate owned by them; that the suit brought by Eva and Shirley attacking the validity of the trust and the transfers made thereto, and also the appeal from the orders probating the will, were without any reasonable foundation in fact and were brought merely to harass and obstruct petitioners in the operation of their businesses; that petitioners were confident of their success if such litigation had been prosecuted to completion, and were only induced to enter into the settlement agreement in order that the various properties *218 might be relieved of the attachments and liens placed against them and petitioners enabled to take advantage of a favorable real estate market. Thus petitioners argue that the payments involved were made in furtherance of their businesses and are deductible as ordinary and necessary business expenses under section 23(a)(1). In the alternative, petitioners argue that, if not regarded as business expenses, such payments were made for the conservation of property and the production of income and are therefore deductible as non-business expenses under section 23(a)(2). Respondent's position is that the payments involved are neither business nor non-business expenses of the petitioners and are therefore not deductible under either of said sections. In support of his position, respondent argues that the payments involved arose out of a family controversy and were therefore personal to the individual members of the family, particularly Frank, Abraham and Benjamin, who signed the settlement agreement as individuals; that the assumption of such payments by the petitioners was voluntary and in any event merely relinquished to the claimants (Eva and Shirley) rights which such claimants admittedly *219 (as evidenced by the settlement agreement) had in the estate of the decedent. Respondent further argues, apparently in the alternative, that the expenditures involved were incurred in defending or perfecting title to property and were therefore capital expenditures and are not deductible. At the outset, we think it clear that the corporate petitioner, Parkway, is not entitled to deduct any portion of the litigation expenses in controversy paid by it in 1952 and 1953. It is not entitled to any deduction under section 23(a)(2) since it is not an "individual" taxpayer within the meaning of that section. It also appears that Parkway, as a corporate entity, was not a party to the litigation instituted by Eva and Shirley in 1951 and was no more than incidentally affected by reason of the fact that the stock of Parkway was included in the property transferred to the Rosoff Trust by Max Rosoff in 1947. In paying a portion of the litigation and settlement expenses, Parkway was merely assuming an obligation of its stockholder, the Rosoff Trust. Whether incurred by the trust in defending or perfecting its title to the stock and other properties (as hereinafter held) or in pursuance of its business, *220 is immaterial insofar as Parkway is concerned. No business purpose of the corporation was shown to have been served and such voluntary assumption was not an ordinary and necessary business expense of Parkway. Cf. Royal Cotton Mill Co., 29 T.C. 761, 787-9; George D. Mann, 33 B.T.A. 281; Forty-four Cigar Co., 2 B.T.A. 1156. We likewise find no merit in the contention of the petitioners that the payments made by the trust in 1952 and 1953, in settlement of the litigation instituted by Eva and Shirley and as attorneys' fees in connection therewith, are deductible under either section 23(a)(1)(A) or section 23(a)(2). In reaching this conclusion, we recognize that section 23(a)(2) may apply in the case of a trust as well as in the case of an individual taxpayer. Section 162, Internal Revenue Code of 1939. We also agree with petitioners that the trustees were engaged in carrying on, on behalf of the trust, a business of operating, managing and selling real estate and, that the payments involved were not the personal expenses of Frank, Abraham and Benjamin. Even though the settlement agreement recited it was entered into between Eva and Shirley as first parties, and Benjamin, Abraham and *221 Frank, as second parties, and the latter parties personally guaranteed payment of the settlement amount, we think it clear that they were acting on behalf of the trust and all of the beneficiaries thereunder for the purpose of freeing the trust properties of all claims against such properties on behalf of Eva and Shirley. We do not agree with petitioners, however, that the payments involved were made solely to enable petitioners to carry on the business of the trust or for the conservation of property and the production of income. In our opinion the payments in question were capital expenditures made for the purpose of defending or perfecting the title of the trust to the properties involved. In the action brought by Eva and Shirley against the trustees and the children of Rosoff by his first wife, they were contending that Rosoff lacked capacity to make an effective transfer of title and hence the trustees had not acquired title to the property which they purported to hold under the trust agreement. By their appeal from the order of the probate court admitting Rosoff's will to probate, Eva and Shirley were also disputing the validity of the will and hence the title to the property *222 purportedly disposed of thereunder. Without undertaking, in these proceedings, to determine the merits of either controversy, we are unable to say, from the evidence presented, that either action was wholly lacking in merit or that Eva and Shirley might not have prevailed had they prosecuted such litigation to completion. Certainly the attorneys representing them, whom petitioners agreed are able and reputable members of the Connecticut Bar, considered the grounds on which the actions were instituted as meritorious. Moreover, the amount of the settlement ($71,500), when compared to the value of the properties as of the date of Rosoff's death ($250,337.50), indicates that petitioners themselves regarded such actions as having more than mere nuisance value and not entirely lacking in merit. It is true that settlement of the litigation removed the obstacles which had prevented the trustees from carrying on the business of the trust and enabled them thereafter to sell or rent the real property and to obtain income therefrom. Such benefits were incidental, however, to the main purpose of the expenditures which was to clear up or perfect the title to the property. The right to such income *223 depended upon possession of the title. It is well established that expenditures made to defend, perfect or acquire title to property are capital expenditures and are not deductible as expenses under section 23(a)(1)(A) or (2). Garrett v. Crenshaw, 196 Fed. (2d) 185; Bowers v. Lumpkin, 140 Fed. (2d) 927, certiorari denied 322 U.S. 755; E. W. Brown, Jr., 19 T.C. 87, affd. on this point, 215 Fed. (2d) 697; Samuel Cohen, 24 T.C. 957. Accordingly, we hold that respondent did not err in disallowing the deductions of the amounts paid as attorneys' fees and in settlement of the litigation in question. Levitt & Sons, Inc. v. Nunan, 142 Fed. (2d) 795, reversing a Memorandum Opinion of this Court, relied upon by petitioners, is distinguishable on the facts and does not require a different result. The amounts paid in settlement of the litigation and as attorneys' fees would nevertheless constitute capital expenditures if, as argued by respondent, they be considered as the "relinquishment" to Eva and Shirley of claims in the property involved to which they were rightfully entitled. See Clara A. McKee, 19 B.T.A. 430, cited by respondent. In that event the amounts paid would represent *224 the cost to the Rosoff Trust in acquiring the interest of Eva and Shirley in the property. As hereinbefore indicated, certain attorney and accountant fees, apparently not incurred in connection with the litigation mentioned above, have been conceded by respondent to be deductible. Apparently, an additional deduction in the amount of $871 is claimed by the trustees as expenses paid to Frank Rosoff for legal services performed for the trust. The only evidence offered to support this claim, however, was the testimony of Benjamin, who had no recollection of the amounts paid or the nature of the services performed. Petitioners have not shown that they are entitled to deduct any greater amount paid to Frank than is included in respondent's concession on stipulation and brief. Decisions will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or business expenses. - (A) In general. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * 2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - * * *
(2) Non-trade or non-business expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩